NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COUNTY OF MONMOUTH, a Body Corporate and Politic of the State of New Jersey, Individually and *Ex Rel.*, for the Benefit of Citizen Relators of Monmouth County Having an Interest in this Matter<br><br>          Plaintiff,<br><br>   v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY<br><br>          Defendant. | Civil Action No. 09-769 (JAP)<br><br>**OPINION** |

PISANO, District Judge:

Presently before the Court are defendant Federal Emergency Management Agency's ("FEMA" or the "Agency") motion to dismiss this suit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiff County of Monmouth's ("Monmouth County" or the "County") motion for an order staying the implementation of flood insurance rate maps that are scheduled to become effective on September 25, 2009. The County seeks relief under the National Flood Insurance Act ("NFIA"), 42 *U.S.C.* § 4001, *et seq.*, challenging changes to Base Flood Elevations[1] ("BFE"), the reclassification of the Bayshore Levee[2] as a dune and the

---

    [1]A Base Flood Elevation is the elevation of a flood "having a one percent chance of being equalled or exceeded in any given year." 44 *C.F.R.* § 59.1.

    [2]The Bayshore area of Monmouth County includes Hazlet Township, Keansburg Borough, Middletown Township and Union Beach Borough. Am. Compl. ¶ 31. The Bayshore

resulting changes to the Flood Insurance Rate Map ("FIRM") covering the municipalities in Monmouth County.  The County argues that FEMA failed to comply with the requirements of the NFIA by using technically incorrect methodology to determine BFEs, by failing to communicate with the communities affected by the new Flood Insurance Study ("FIS") and FIRM, by not following statutory procedure for administrative appeals, and by acting in an arbitrary and capricious manner when declassifying the Bayshore Levee.  The County also seeks relief under the National Environmental Policy Act ("NEPA"), 42 *U.S.C.* § 4321, *et seq.*, challenging FEMA's determination that the Agency was not obligated to prepare an Environmental Analysis ("EA") or an Environmental Impact Study ("EIS") related to the new FIS and FIRM.

In its motion, FEMA maintains that the Court lacks subject matter jurisdiction to hear the County's challenge under NFIA because Congress has chosen to severely limit judicial review and there is no waiver of sovereign immunity, and that the County lacks standing to challenge the Agency's decision not to prepare an EA or EIS.  Because this Court concludes that it lacks subject matter jurisdiction over the instant dispute, the Defendant's motion to dismiss is granted pursuant to Federal Rule of Civil Procedure 12(b)(1)[3] and the County's motion to stay the implementation of the FIRM is denied.

I.      **Background**

Pursuant to the NFIA, FEMA is authorized to study, investigate, and publish information for flood plains having special flood hazards and to establish flood-risk zones for the affected

---

Levee is a barrier that "borders Raritan Bay from eastern Union Beach to the west bank of Pews Creek in Middletown." *Id*. at ¶ 33.

[3] Because the Court holds that it does not have subject matter jurisdiction over the instant dispute this Opinion does not address Defendant's 12(b)(6) argument.

areas. 42 *U.S.C.* §§ 4003; 4011(a). The Agency has undertaken a restudy of the flood hazards affecting the municipalities in Monmouth County as an exercise of the authority granted to it by the NFIA. On January 11, 2008, FEMA issued a revised FIS and FIRM based upon the results of the restudy. Am. Compl., Ex. B, § 2.4. The January 11, 2009 FIS provisionally accredited a protection system in the Bayshore region of Monmouth County, known as the Bayshore Levee, as a levee based upon the protection system's classification as a levee in prior studies. *Id*. Subsequent to issuance of the January 11, 2008 FIS, the United States Army Corps of Engineers provided information to FEMA showing that the protection system does not meet the current regulatory requirements for a levee. A.R. 712.[4] Consequently, FEMA revoked the provisional accreditation. Am. Compl., Ex. C, § 2.4. The reclassification of the Bayshore Levee has caused a greater portion of Monmouth County to lie within a flood plain. Am. Compl. ¶ 13. FEMA continued the study and on May 9, 2008 issued a second revised FIS incorporating changes that had been made since issuance of the January 11, 2008 study, including the declassification of the Bayshore Levee. Am. Compl., Ex. C, § 2.4. The May 9, 2008 study was published in the Federal Register and notice was sent to participating communities affected by the change. A.R.1063-1073; A.R.1498-1501.

On March 25, 2009, FEMA sent Letters of Final Determination to the participating communities informing them that the FIS and FIRM would become effective on September 25, 2009. A.R. 1827-2124. On June 15, 2009, the Final FIS was published in the Federal Register. A.R.1573-1607. FEMA sent the participating communities a "90-day notification letter" on June 25, 2009, and a "30-day notification letter" on August 14, 2009, reminding them that a new FIS

---

[4]All cites to "A.R." are to the administrative record.

and FIRM become effective on September 25, 2009.  A.R.2878-2976; A.R. 2977-3068.  On August 7, 2009, a Final FIS incorporating all of the changes from the January 11, 2008 and May 9, 2008 FIS reports was issued.  A.R. 2126-2581; A.R. 2582-2634.

On February 20, 2009, Monmouth County filed a five count complaint in this Court against FEMA alleging that 1) BFEs were created or modified without the community consultation that is required by law, resulting in a denial of due process rights to those adversely affected; 2) the decision by FEMA to deem the Bayshore Levee no longer protective, was arbitrary and capricious and without justification or support; 3) the methodology employed by FEMA in determining the BFEs was technically incorrect; 4) the Director failed to comply with 42 *U.S.C.* § 4104(e) when reviewing the County's administrative appeal and that his decision in the administrative appeal can not be sustained; and 5) FEMA failed to comply with the NEPA.  On May 22, 2009, the County filed an Amended Complaint adding a sixth count alleging that the March 25, 2009 Final Determination Letters issued by FEMA to the municipalities in Monmouth County were deficient and ineffective to cause the modification of BFEs and revised map panels to become effective on September 25, 2009.  Am. Compl. ¶¶ 70-75.

## II.     Discussion

### A.     Standard of Review Under 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to dismiss claims based on a lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Where a defendant challenges the jurisdiction on the face of the complaint, the court must assume the veracity of plaintiff's allegations; in contrast, a factual challenge to a court's jurisdiction does not require a court to afford plaintiff's allegations the presumption of truthfulness.  *See Mortensen v. First Fed. Sav. &*

4

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Dasrath v. Continental Airlines, Inc.*, 228 F. Supp. 2d 531, 534 (D.N.J. 2002); *Med. Soc'y of New Jersey v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) ("A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction," while a factual attack "calls into question the essential facts underlying a claim of subject matter jurisdiction."). In adjudicating a factual 12(b)(1) challenge, the court may consider affidavits, depositions, and testimony to resolve factual issues, and weigh the evidence to satisfy itself as to the existence of its power to hear the case. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). Because Defendant's 12(b)(1) motion is a factual challenge to jurisdiction over the instant controversy, the Court does not limit its recitation of the facts to only those alleged in the Complaint. *See, e.g., Med. Soc'y of New Jersey*, 191 F. Supp. 2d at 578-80 (after discussing factual and facial jurisdictional challenges under 12(b)(1), holding certain claims were not ripe for judicial review after considering evidence outside the pleadings).

      B.      **The National Flood Insurance Act of 1968, as amended**

The NFIA is Congress's attempt to prevent the personal and economic devastation caused by flooding in the United States. 42 *U.S.C.* § 4001(a). The statute attempts to achieve this goal through a combination of flood insurance and land use restrictions in flood prone areas. 42 *U.S.C.* § 4002. The NFIA makes flood insurance available to the owners and lessees of land located in participating communities. *Id*. Only communities that enact land use regulations consistent with the Act may participate. 42 *U.S.C.* § 4022(a)(1).

FEMA is empowered to implement the flood insurance program created by the NFIA. 42 *U.S.C.* §§ 4003, 4011(a). As part of implementing the program, the Agency is required to assess

5

the need to revise and update existing flood plain maps at least every five years, and produce new FIS reports and FIRMs when necessary. 42 *U.S.C.* §§ 4101(e), (f)(1); 4102.

FEMA is required to publish any proposed changes to BFEs in a "prominent local newspaper at least twice" after notification is made to the affected communities. 42 *U.S.C.* § 4104(b). Private land owners or lessees who believe that their property rights have been adversely affected by FEMA's proposed changes to BFEs may

> appeal such determination to the local government. The *sole basis* for such appeal shall be the possession of knowledge or information indicating that the elevations being proposed by the Director with respect to an identified area having special flood hazards are scientifically or technically incorrect, and the sole relief which shall be granted under the authority of this section in the event that such appeal is sustained in accordance with subsection (e) or (f) of this section is a modification of the Director's proposed determination accordingly.

*Id*. (emphasis added).

Such an appeal may be brought within 90 days of the second newspaper publication. *Id*. An appeal by a private land owner or lessee to the community must contain data that tends to negate the BFE determinations made by FEMA. 42 *U.S.C.* § 4104(c). The community is required to review and consolidate all appeals received from private land owners or lessees, and issue a written opinion stating whether or not such appeals have sufficient merit to support an appeal by the community on behalf of the private land owners or lessees in the community's name. *Id*. Whether or not a community chooses to appeal in its own name, copies of the appeals filed by private citizens must be forwarded to FEMA along with the community's appeal or written decision not to appeal. *Id*. If a community chooses not to appeal in its own name on behalf of aggrieved citizens, FEMA will review the private appeals along with the community's written decision not to appeal. 42 *U.S.C.* § 4102(d).

When a community appeals BFE determinations, the Director must "review and take fully into account any technical or scientific data submitted by the community that tend to negate or contradict the information upon which his proposed determination is based." 42 *U.S.C.* § 4104(e). Community appeals are resolved either by consultation with the community, by administrative hearing, or by submitting conflicting data to an independent scientific body or Federal agency for advice. *Id*. If a community is not satisfied with the result of its administrative appeal, it may bring suit in the United States District Court within 60 days. 42 *U.S.C.* § 4104(g). The Court must then review the Agency action using the standard set out in the Administrative Procedures Act ("APA") at 5 *U.S.C.* § 706. *Id*.

In this case, the County argues that 1) the NFIA does not limit this Court's jurisdiction solely to the review of BFEs, 2) it is a community as defined by the statute, and 3) it has exhausted its administrative remedies by bringing a proper administrative appeal as a community and as a private land owner.

It is the County's contention that the waiver of sovereign immunity found at 42 *U.S.C.* § 4104 only applies to challenges to BFE determinations and that, by implication, the APA provides a waiver of sovereign immunity for challenging all other determinations made by FEMA when conducting an FIS. The County is mistaken.

It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A waiver of sovereign immunity may not be implied, it must be unequivocally expressed. *Id*. (citing *United States v. King*, 395 U.S. 1, 4

(1969)). A court does not have jurisdiction to entertain a suit against the United States absent clear Congressional consent. *Id.* (citing *Sherwood*, *supra*, 312 U.S. at 587-588). Waivers of sovereign immunity are generally not liberally construed, but are traditionally "construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992) (quoting *McMahon v. United States*, 342 U.S. 25, 27 (1951)).

When enacting the NFIA, Congress spent more time debating the waiver of sovereign immunity than any other provision in the Act.[5] *Reardon v. Krimm*, 541 F. Supp. 187, 189 (D. Kan. 1982). The County argues that 42 *U.S.C.* § 4101(g) implies that the APA applies to all claims, other than those related to BFEs, challenging FEMA's action under the NFIA because the statute directs the District Court to review appeals of BFEs using the standard of review found in the APA. Am. Compl. ¶ 40. The Court may not imply a waiver of sovereign immunity that is not expressly found in the statute, instead the waiver of sovereign immunity found in the NFIA must be enforced according to its clear and unambiguous terms. *Mitchell*, *supra*, 445 U.S. at 538. Therefore, the Court concludes that the waiver of sovereign immunity is limited to that found in the NFIA and only the BFE determinations may be challenged. The APA does not provide a basis for jurisdiction.

According to the express terms of the NFIA, only certain parties may challenge the Agency's BFE determinations. 42 *U.S.C.* § 4104(b), (e). Parties permitted to challenge the Agency are limited to communities, as defined by the NFIA and regulations, and private land owners or lessees affected by the revised BFEs. *Id.* The County argues that it is a community

---

[5]The NFIA contains two explicit waivers of sovereign immunity. The first waives sovereign immunity for challenges to disallowance of flood insurance claims and is not applicable to this case. 42 *U.S.C.* § 4072.

under the statute.

Community is defined by the NFIA as "a State or a political subdivision thereof which has zoning and building code jurisdiction over a particular area having special flood hazards." 42 U.S.C. § 4003(a)(1).  The regulations expand the definition of community to "any State or area or political subdivision thereof . . ., which has authority to adopt and enforce flood plain management regulations for the areas within its jurisdiction."  44 C.F.R. § 59.1.  The regulations define flood plain management as "the operation of an overall program of corrective and preventive measures for reducing flood damage, including but not limited to emergency preparedness plans, flood control works and flood plain management regulations."  *Id*.  Flood plain management regulations are "zoning ordinances, subdivision regulations, building codes, health regulations, special purpose ordinances (such as a flood plain ordinance, grading ordinance and erosion control ordinance) and other applications of police power."  *Id*.

The County is not a community under the statute.[6]  To be a community the County must possess the power to adopt and enforce "an overall program of corrective and preventive measures for reducing flood damage."  *See* 42 *U.S.C.* § 4003(a)(1); 44 *C.F.R* § 59.1.  The County is not vested with such power.  The New Jersey State Constitution vests the power to regulate land use in municipalities other than counties.  N.J. Const., art. IV, § VI.  The New Jersey State Constitution states

> The Legislature may enact general laws under which municipalities, *other than counties*, may adopt zoning ordinances limiting and restricting to specified districts

---

[6]Since the County is not a community under the statute the Court declines to address the County's claims that FEMA failed to consult with the communities as required, that the Agency failed to properly address the County's appeal and protest, and that the Agency acted in an arbitrary and capricious manner when it declassified the Bayshore Levee.

>   and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State. Such laws shall be subject to repeal or alteration by the Legislature.
>
>   *Id*. (emphasis added).

Municipality means "any city, borough, town, township or village." *N.J.S.A.* 40:55D-5. While the County has been vested with limited power to review and approve certain land uses that affect county roads or drainage facilities,[7] it does not have general authority to adopt and enforce flood plain management regulations so as to create "an overall program of corrective and preventative measures for reducing flood damage. . . ." as required by 44 *C.F.R.* § 59.1. *See N.J.S.A.* 40:27-6.2; -6.3; -6.6. Therefore, the County may not challenge the Agency's actions under the NFIA as a community.

The County also argues that it has properly appealed the BFEs as a private land owner whose property rights have been adversely affected by FEMA's actions. Am. Compl. ¶ 2. The County failed to follow the procedures provided by the NFIA for appeals by private land owners and, therefore, may not bring suit in this Court. The NFIA requires that aggrieved land owners first appeal to the community in which the property is located. 42 *U.S.C.* § 4104(b). The County did not file an appeal with the community in which its property is located. Instead, the County appealed directly to FEMA, in direct violation of the procedures outlined in the statute. Am. Compl, Ex. F. Therefore, because the County failed to comply with the statutory requirements

---

[7]The County also notes in its brief that is authorized by statute to "prepare a stormwater control and drainage plan for the county" pursuant to *N.J.S.A.* 58:16A-55.4. Pl. Br. at 21. The cited statute does not vest the County with sufficient power to adopt and enforce flood management regulations as defined in 44 *C.F.R.* § 59.1 and does not make the County a community for purposes of the NFIA.

governing appeals of BFEs this court lacks jurisdiction to review FEMA's BFE determinations. 42 *U.S.C.* § 4104(g).

This court also lacks jurisdiction to review the claims of the "more than 1400 citizen relators" that the County claims to represent. Am. Compl. ¶ 2. As discussed above, the NFIA provides a procedure for appeals brought by private land owners or lessees who feel that their property rights have been adversely affected. The "citizen relators" did not follow the outlined procedure. Therefore, this Court lacks jurisdiction to hear their claims.

    **C.**    **The Little Tucker Act**

The County argues that the little Tucker Act, 28 *U.S.C.* § 1346(a)(1), provides an additional basis for jurisdiction. Am. Compl. ¶ 4. The little Tucker Act grants the district courts jurisdiction over

> [a]ny [] civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

28 *U.S.C.* § 1346.

The County is once again mistaken. The little Tucker Act waives sovereign immunity only with respect to certain claims for money damages. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (citing *United States v. King*, 395 U.S. 1, 2-3 (1969)). It does not create any substantive right that may be enforced against the government. *Id*. at 216. A party claiming jurisdiction under the little Tucker Act must have an independent substantive right to relief. *Id*.

11

Here, the County is not seeking money damages nor is it entitled to money damages under the NFIA. The statute limits the relief that may be granted to "a modification of the Director's proposed determination." 42 *U.S.C.* § 4104(b). Therefore, the Little Tucker Act has no application in this case.

### D. The National Environmental Policy Act of 1968

The NEPA was enacted to

> [d]eclare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality.

42 *U.S.C.* § 4321.

To that end, the statute requires governmental agencies to include an EIS with all proposals of "major Federal action[] significantly affecting the quality of the human environment." 42 *U.S.C.* § 4332(C). In the interest of efficiency, the regulations promulgated by the Council on Environmental Quality create an exception, termed a "categorical exclusion," to the requirement that agencies prepare and include an EIS prior to taking a proposed action. 40 *C.F.R*. § 1508.4. A categorical exclusion is available when a category of actions "do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required." *Id*. When a categorical exclusion applies an EA or EIS is only required when extraordinary circumstances exist. *Id*.

In this case, FEMA did not prepare an EA or an EIS related to the updated FIS or FIRM

12

because a categorical exclusion applies. 44 *C.F.R.* § 10.8(d)(2)(iii) (creating a categorical exclusion for "[s]tudies that involve no commitment of resources other than manpower and associated funding"). The County challenges FEMA's determination that a categorical exclusion applies, arguing that extraordinary circumstances exist that require an EA or EIS be prepared before agency action is taken. Am. Compl. ¶¶ 64; 66. FEMA argues that the County lacks standing to challenge the Agency's decision not to prepare an EA or EIS. Def. Br. at 33. The Court agrees that the County lacks standing to challenge the categorical exclusion.

A plaintiff invoking the jurisdiction of the Court has the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). There are three Constitutional requirements for standing. *Id*. at 560. A plaintiff has standing if it 1) has suffered an injury in fact, i.e., a concrete and particularized invasion of a legally protected interest, 2) the injury is "fairly ... trace[able] to the challenged action of the defendant," and 3) a favorable decision will redress the injury complained off." *Id.* at 560-61. Only an injury that affects the plaintiff in a "personal and individualized way" is particularized for purposes of standing. *Id*. at 561 n.1. Generalized grievances are not sufficient to establish standing. *Id*. at 573-74.

NEPA does not provide a private right of action; thus, the County must rely upon the APA as a basis for relief. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). Under the APA "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," may seek judicial review of the complained of action. 5 *U.S.C.* § 702. In order to invoke the jurisdiction conferred by the APA, a plaintiff must meet two standing requirements in addition to those imposed by the Constitution. *See Nat'l Wildlife Fed'n*, *supra*, 497 U.S. at 882. First, the plaintiff must "identify some 'agency action' that affects him in the specified fashion." *Id*. Second, the plaintiff must "show that he has

'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" *Id*. In order to fulfill the second requirement, a plaintiff must show that it has suffered an injury in fact that falls within the "zone of interest" protected by the relevant statute. *Id*. (citing *Clarke v. Sec. Indus. Assn.*, 479 U.S. 388, 396-397 (1987)).

Here, the County has failed to demonstrate that it will suffer an injury in fact as a result of the FIS and FIRM slated to become effective on September 25, 2009. The County claims, rather disingenuously, that there are two fundamentally conflicting FISs and FIRMs scheduled to go into effect on September 25, 2009,[8] and that, as an entity charged with land use control in the area covered by the FIS and FIRM, it will be adversely affected. Pl. Br. at 26. However, in its brief, the County does not address how it is affected by FEMA's decision not to prepare an EA or EIS. It merely reasserts its argument that declassifying the Bayshore Levee will adversely affect the County and the citizen relators the County claims to represent. Pl. Br. at 25-26. Further, the County has not shown that it is within "the zone of interest" that the NEPA is trying to protect by requiring agencies to prepare EAs or EISs prior to taking "major Federal action[] significantly affecting the quality of the human environment." Therefore, the County does not have standing to challenge FEMA's use of a categorical exclusion.

The "more than 1400 citizen relators" also lack standing to challenge FEMA's decision not to prepare an EA or EIS. The Court recognizes that FEMA's decision to declassify the Bayshore Levee has consequences that affect many residents of the Bayshore area of Monmouth County. However, the County's complaint does not demonstrate that the relators have been injured in a way

---

[8] FEMA issued a final FIS and FIRM on August 7, 2009 incorporating both the January 11, 2008 and the May 9, 2008 Preliminary FISs. A.R. 2126-2581.

14

that the NEPA is meant to prevent. Instead, the complaint and briefs submitted by the County contain only vague allegations that the declassification of the Bayshore Levee is "highly controversial" because affected residents must now purchase flood insurance. Pl. Br. at 25-26. This is simply not sufficient to establish standing and the relators' claim must be dismissed.

### III.  Conclusion

For the reasons above, Defendant's motion to dismiss is granted and Plaintiff's motion to stay is denied as it is now moot. An appropriate Order accompanies this opinion.


/s/ JOEL A. PISANO
United States District Judge

Dated: September 24, 2009